IN THE UNITED STATES BANKRUPTCY COURT
FOR THE SOUTHERN DISTRICT OF ALABAMA
SOUTHERN DIVISION

In re:

GWENDOLYN ELAINE GARRETT,                   Case No.: 09-14269-MAM

    *Debtor*.

JONAS DILLARD,                               Adv. Proc. No.: 09-01142-MAM

    *Plaintiff*,
v.

GWENDOLYN ELAINE GARRETT,

    *Defendant*.


HUGH VASCONCELLOS,                 Adv. Proc. No.: 09-01143-MAM

    Plaintiff,
v.

GWENDOLYN ELAINE GARRETT,

    Defendant.

**ORDER DENYING PLAINTIFFS' OBJECTIONS TO DISCHARGEABILITY**

    Christopher Kern, attorney for Debtor
    Richard Watters, attorney for Plaintiffs

This matter is before the Court on the objections of Plaintiffs Jonas Dillard and Hugh Vasconcellos to the dischargeability of their debts in the case of Debtor Gwendolyn Garrett. The Court has jurisdiction to hear this matter pursuant to 28 U.S.C. §§ 157 and 1334 and the Order of Reference of the District Court. This is a core proceeding pursuant to 28 U.S.C. § 157(b)(2)(1),

1

and the Court has authority to enter a final order. For the following reasons, Plaintiffs' objections to dischargeability are due to be DENIED.

## PROCEDURAL HISTORY

Jonas Dillard filed suit against Jeffrey Garrett, et al, in the Circuit Court of Mobile County, Alabama on October 25, 2007. Debtor Gwendolyn Garrett filed a voluntary chapter 7 petition on September 15, 2009. Plaintiffs Vasconcellos and Dillard commenced their respective adversary proceedings objecting to dischargeability on December 18, 2009. The Court held a trial on this matter on July 23, 2010, and took the matter under advisement.

## FACTS

Debtor began operating Legends Cleaners, a dry cleaning business, with her husband Jeffrey Garrett in October of 1999. Debtor and her husband contemplated selling the business for some time but formally signed a listing agreement with Sunbelt Brokers, Inc., on January 2, 2007. Debtor leased the business location from Delaney Properties. The business equipment was subject to a $463,000 lien held by Solo-SS, Ltd., a financing company. Compound Management, LLC, is the general partner for Solo-SS, Ltd., and Steve Smith is a member of Compound Management. Debtor informed Steve Smith about her intention to sell Legend Cleaners, and they negotiated a lower lien payoff of $250,000 in the event the business was sold. At the time she decided to sell the business, Debtor was in immediate need of money to pay Solo-SS, vendors, rent, and assorted bills that were due.

Plaintiff Hugh Vasconcellos was a customer of Legends Cleaners prior to January of 2007. He decided to buy Legend Cleaners and consulted with local church Bishop Arthur Holmes for his advice. Mr. Vasconcellos and Debtor negotiated a sale price of $350,000.

Debtor contacted the Southern Law Firm to draft the necessary paperwork. Mr. Vasconcellos signed the purchase agreement and promissory note on February 5, 2007, agreeing to purchase the business for $350,000. The purchase agreement required a non-refundable earnest money payment of $50,000, payable in the amounts of $10,000 on or before January 25, 2007, and $40,000 on or before the closing date of February 15, 2007. The remaining balance of $300,000 was payable in monthly payments of $5,524.96, commencing March 1, 2007, until paid in full.

Mr. Vasconcellos gave Debtor $10,000 on the day he signed the promissory note (February 5, 2007) and promised to pay the remaining $40,000 as agreed at closing. Mr. Vasconcellos testified that he signed the note without seeing any business records. After signing the note and paying Debtor $10,000, Mr. Vasconcellos began working at the business in order to learn how to run it. He was not paid for his work during that period of time.

It is not clear from the record exactly when Mr. Vasconcellos first asked to see business records of Legend Cleaners, but Mr. Vasconcellos testified that he signed the note before asking to see them. Mr. Vasconcellos testified that when Debtor did provide him with records, they were several years old. He also testified that Debtor showed him and his sister a bonus check for $50,000 that was several years old. Mr. Vasconcellos testified that Debtor never produced any recent business records.

Mr. Vasconcellos intended to borrow the remaining escrow amount of $40,000 from his sister in New York, but she refused to loan him the money until she saw updated business records. Mr. Vasconcellos never paid the $40,000 escrow balance due. Debtor gave him an extension for an unspecified amount of time in which to make the first monthly payment of $5,524.96 (that had been due March 1, 2007 according to the promissory note), but he did not

Case 09-01143    Doc 21    Filed 08/06/10    Entered 08/06/10 15:36:35    Desc Main
Document      Page 3 of 9

begin making any payments. Mr. Vasconcellos testified that he did not make any payments other than the initial $10,000 because Debtor refused to show him updated business records. Mr. Vasconcellos further testified that Debtor promised to give him his $10,000 back if he refrained from suing her.

Around May 2007, Plaintiff Jonas Dillard learned about an opportunity to purchase Legend Cleaners from the pastor of his church, Bishop Arthur Holmes. Mr. Dillard was not aware of the prior purchase agreement between Debtor and Mr. Vasconcellos. Debtor agreed to sell Mr. Dillard the business for $350,000. On June 7, 2007, Mr. Dillard verbally agreed to the purchase price and paid $50,000 to Debtor and agreed to make monthly payments on the remaining balance, beginning in either June 2007 or July 2007. Mr. Dillard never signed a purchase agreement/promissory note because he did not agree to all of its terms.

The week after paying Debtor $50,000, Mr. Dillard began working at the business in order to learn how to run it. He was given a set of keys and was responsible for opening the business several times. Mr. Dillard ran the business for approximately 17-20 days. Mr. Dillard found that the store was not earning what he expected and that he was involved in a bad business deal. He asked for his money back, but Debtor did not return it. Mr. Dillard testified that he made the first monthly payment to Debtor, although he could not recall when he made it or in what amount. He did not make a second monthly payment.

Mr. Dillard testified that Debtor changed the locks on the business in late July or early August of 2007. Debtor testified that she changed the locks after Mr. Dillard contacted her and informed her that their arrangement was not working out, that he was not getting paid, and that

4

Case 09-01143    Doc 21    Filed 08/06/10    Entered 08/06/10 15:36:35    Desc Main
Document      Page 4 of 9

she could talk to Bishop Holmes about returning the money. Mr. Dillard testified that he never saw Debtor's business records even though he asked to see them on more than one occasion.

Overall, neither Plaintiff was aware of Solo-SS, Ltd.'s lien on the business' equipment nor did either Plaintiff see any updated or recent business records pertaining to Legend Cleaners. Of the $50,000 she received from Mr. Dillard, Debtor testified that she paid $10,000 to her landlord, Delaney Properties, $30,000 to Solo-SS towards its lien payoff, and $10,000 to Bishop Holmes.

Inga Bartley testified that she has known Debtor for six to seven years. Ms. Bartley stated that on two occasions, approximately two or three years ago, she put $12,000 and $30,000 into Legend Cleaners. She testified that she put money into the business because she shared Debtor's dream of establishing a drop-off dry cleaning location, but the cash infusion was not an attempt to buy Legend Cleaners from Debtor.

**LAW**

Plaintiffs brought this action against Debtor objecting to the dischargeability of their debts under 11 U.S.C. § 523(a)(2) and (a)(6). 11 U.S.C. § 523(a)(6) states that an individual debtor is not discharged from any debt "for willful and malicious injury by the debtor to another entity or property of another entity." In Plaintiffs' pleadings and at trial, Plaintiffs failed to present any evidence or argument regarding willful and malicious injury. Therefore any objection to dischargeability under § 523(a)(6) is properly denied. The Court will only consider Plaintiffs' objections to discharge under § 523(a)(2).

11 U.S.C. § 523(a)(2) states that an individual debtor is not discharged from any debt:

5

for money, property, services, or an extension, renewal, or refinancing of credit, to the extent obtained by - (A) false pretenses, a false representation, or actual fraud, other than a statement respecting the debtor's or an insider's financial condition; (B) use of a statement in writing (i) that is materially false; (ii) respecting the debtor's or an insider's financial condition; (iii) on which the creditor to whom the debtor is liable for such money, property, services, or credit reasonably relied; and (iv) that the debtor caused to be made or published with intent to deceive. . . .

11 U.S.C. § 523(a)(2). Plaintiff must prove each element by a preponderance of the evidence. *Grogan v. Garner*, 498 U.S. 279, 291, 11 S. Ct. 654, 112 L. Ed. 2d 755 (1991); *Equitable Bank v. Miller*, 39 F.3d 301, 304 (11th Cir. 1994). The Court will address each section of 523(a)(2) in turn.

### I. § 523(a)(2)(A)

§ 523(a)(2)(A) requires the Plaintiffs to show (1) Debtor made a false representation; (2) Debtor knew it was false when the representation was made; (3) debtor made the representation to deceive the Plaintiffs; (4) Plaintiffs justifiably relied on the representation; and (5) Plaintiffs sustained a loss as a proximate result. *In re Eisinger*, 304 B.R. 492, 498 (Bankr. M.D. Fla. 2003). Plaintiffs allege in their complaints that Debtor falsely represented to them that she would sell them her business, Legend Cleaners. The evidence does not indicate by a preponderance of the evidence that this was a false representation.

The evidence of record shows that Debtor did intend to convey her business to a buyer, but the sale to each of the Plaintiffs fell through. Debtor executed a valid purchase agreement and promissory note with Mr. Vasconcellos. Mr. Vasconcellos began working in the business alongside Debtor in order to learn how to operate it on his own. The sale fell through when Mr. Vasconcellos failed to pay the remaining $40,000 escrow amount and failed to make any

6

monthly payments. The failure of the sale to Mr. Vasconcellos does not indicate that Debtor falsely represented her intent to sell her business.

Evidence shows that Debtor intended to execute a purchase agreement and promissory note with Mr. Dillard, but Mr. Dillard was the party that chose not to sign the document because he did not agree with all of its terms. Mr. Dillard began working alongside Debtor to learn how to operate the business, and Mr. Dillard fully operated the business on his own for 17-20 days. Only after Mr. Dillard informed Debtor of his intention to end their arrangement did Debtor change the locks on the doors of Legend Cleaners. The failure of the sale to Mr. Dillard does not indicate that Debtor falsely represented her intent to sell the business to him.

Although the Plaintiffs allege in their complaints that Debtor misrepresented her intention to sell the business to each of them, they failed to provide any evidence that Debtor misrepresented her intent to sell her business. The facts, including testimony from Debtor and Plaintiffs, indicate the opposite. There was no false representation as to Debtor's intent to sell her business, thus Plaintiffs cannot prove any other elements of § 523(a)(2)(A). Plaintiffs' objection to dischargeability under § 523(a)(2)(A) are due to be denied.

The Plaintiffs also seem to argue that their agreements to purchase were made based upon false statements by Ms. Garrett about the profitability of the business. However, the Plaintiffs offered no evidence that showed the business income was not at the levels Debtor indicated it was at the time of the outdated financials. Mr. Dillard and Mr. Vasconcellos gave Debtor money without any information about current finances being provided. An objection to dischargeability under § 523(a)(2)(A) on the basis of Debtor's oral representation as to the profitability of the business is due to be denied.

7

Case 09-01143    Doc 21    Filed 08/06/10    Entered 08/06/10 15:36:35    Desc Main
Document    Page 7 of 9

## II. § 523(a)(2)(B)

§ 523(a)(2)(B) requires the Plaintiffs to show that Debtor (1) used a statement in writing that was materially false, (2) respecting Debtor's financial condition, (3) that the creditor relied on, (4) and that Debtor made or published with an intent to deceive. The Plaintiffs must prove each of these elements by a preponderance of the evidence.

Plaintiffs argue that Debtor used a false statement in writing when she presented them with outdated business records. However, Plaintiffs did not present any evidence or even suggest that Debtor falsified the documents. Plaintiffs acknowledged at trial that they knew the records provided by Debtor were two or three years old, and both Plaintiffs stated that they persisted in asking for updated documentation because they knew they were looking at old record. There was no allegation that the statements contained in the old records were materially false.

More importantly, the Plaintiffs are unable to prove that they *relied* on any statements in writing in making their decisions to enter agreements with the Debtor. The Plaintiffs cannot prove reliance on financial statements from the Debtor because they both testified at trial that they did not ask for any business records or business documentation until *after* they entered their respective agreements with the Debtor. Here the Plaintiffs have failed to prove that Debtor presented them with a materially false statement in writing, and they have failed to prove that they relied on *any* statement in writing in making their decision to buy Debtor's business. Plaintiffs have failed to prove two essential elements of exception to discharge under § 523(a)(2)(B), and their objections to discharge are due to be denied.

## III.

Because Plaintiffs have failed to meet their burden of proof, the Court finds in favor of the Debtor on Plaintiffs' allegations under § 523(a)(2)(A) and (a)(2)(B). Plaintiffs' objections to the dischargeability of their debts are due to be DENIED.

Dated: August 6, 2010

_____
MARGARET A. MAHONEY
CHIEF U.S. BANKRUPTCY JUDGE